**IN THE COURT OF APPEALS OF IOWA**

No. 24-0278
Filed June 18, 2025


**IN RE THE MARRIAGE OF KENNETH M. HOWARD
AND ANNA V. HOWARD**

**Upon the Petition of
KENNETH M. HOWARD,**
        Petitioner-Appellant,

**And Concerning
ANNA V. HOWARD,**
        Respondent-Appellee.
_____


        Appeal from the Iowa District Court for Polk County, Coleman McAllister,

Judge.


        A petitioner appeals the child-support, spousal-support, and property-

division provisions of the decree dissolving the parties' marriage. **AFFIRMED AS**

**MODIFIED AND REMANDED.**


        Steve Hamilton of Hamilton Law Firm, P.C., Clive, for appellant.

        Donna R. Miller of Miller, Zimmerman & Evans PLC, Des Moines, for

appellee.


        Considered without oral argument by Schumacher, P.J., and Buller and

Langholz, JJ.

**LANGHOLZ, Judge.**

Kenneth "Mike" Howard appeals the decree dissolving his twenty-three-year marriage with Anna Howard. Mike argues that the district court erred when calculating child support by not adjusting both parties' incomes to account for the spousal-support award, and Anna agrees. He also requests a reduction in the spousal-support award. And he contends that the district court erred by including vehicles in the property division that he claims were his premarital property.

We agree that the parties' incomes should have been adjusted for spousal support in the court's child-support calculations and remand to the district court to recalculate the child-support award. But on the remaining issues, we affirm the district court's decree. We find that the short-term rehabilitative spousal support award is equitable given Anna's need for training to become self-supporting. And Mike failed to preserve error on his claim that his vehicles were premarital assets. We also decline Anna's request for appellate attorney fees.

## I.      Factual Background and Proceedings

In 2001, Mike met Anna in Russia; they soon married. Anna was twenty-one years old, had a fashion design degree, and was employed with "sewing work." Mike—who was forty-five years old—worked as a railroad employee early in the marriage. They moved to Iowa in 2002, living on Mike's property outside Madrid. Anna gave birth to the first of their five children the next year and stayed home to care for the children. Three of their children are now adults.[1] The two minor children were born in 2012 and 2014.

---

[1] One of the three became an adult after the dissolution decree was filed.

Anna began working outside the home in 2018, first in a nursing home kitchen. A couple of years later, the oldest child taught her how to drive. She took classes to become a certified nursing assistant ("CNA") and moved into that position in 2021. At the time of the dissolution trial, Anna—who was now forty-four years old—was working part-time as a CNA with an annual income of just over $28,000 while also studying to become a surgical technician. She estimated it would take her two years to finish the program.

During the marriage, Mike worked for the railroad and a demolition business and eventually began driving a truck. He was often away from home for weeks at a time. At the time of trial, Mike—then sixty-eight years old—was an over-the-road trucker making over $122,000 per year.

The court held the dissolution trial in January 2024. Mike—who was then representing himself after consenting to his attorney's withdrawal—did not appear. So the court received exhibits and testimony from only Anna. In its decree, the court placed the two youngest children in Anna's physical care and the oldest then-minor child in Mike's care. It also divided the parties' assets and ordered Mike to pay Anna $2000 per month of rehabilitative spousal support for thirty months. And following Anna's proposed child-support calculation—which did not factor in any spousal-support award—the court ordered Mike to pay Anna child support.

Mike unsuccessfully asked the court to reconsider the physical-care placement for the youngest two children. And he now appeals, challenging only the decree's child-support, spousal-support, and property-division provisions.

## II.     Error Preservation

Before reaching the merits of Mike's claims on appeal, we must consider whether Mike has preserved error even though he failed to appear at trial. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). This gives the district court a chance to correct the error itself "at a time when corrective action can be taken." *In re Marriage of Heiar*, 954 N.W.2d 464, 470 (Iowa Ct. App. 2020) (cleaned up). It ensures that we are reviewing a decision already made rather than addressing it for the first time on appeal. *See Meier*, 641 N.W.2d at 537. And it "preserve[s] judicial resources by avoiding proceedings that would have been rendered unnecessary had an earlier ruling on the issue been made." *Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000). Given all these interests protected by the requirement, we address whether error is preserved even when not raised by the opposing party. *See id.*

A party still must preserve error in a dissolution appeal because we only conduct "review de novo, not trial de novo or trial anew." *In re Marriage of Huston*, 263 N.W.2d 697, 699–700 (Iowa 1978). Yet even a defaulting party to a dissolution decree may seek review of the "basic fairness of the decree's provisions in light of the total record made at trial." *Id.* at 700.

Following this precedent, we conclude that we may consider Mike's claims that the child- and spousal-support awards are inequitable. *See id.* But Mike's third challenge—to the property division—is not properly preserved. He argues only that four vehicles that the district court included in the division should have

been excluded as premarital assets. But aside from a summary assertion in his financial affidavit that Anna submitted into evidence, Mike submitted no evidence that he owned any of the vehicles before his marriage.[2] Raising this factual question now after "his trial court dereliction" is too late. *Id.* We thus confine our review to Mike's child- and spousal-support challenges.

### III. Child Support

Mike argues the court failed to consider the spousal-support award's effect on each party's income when calculating child support. Anna concedes the court should have included the spousal-support award in its child-support calculation. The parties are correct: "If spousal support is to be paid in the pending matter, . . . it will be determined first and added to the payee's income and deducted from the payor's income before child support is calculated." Iowa Ct. R. 9.5(1)(a)(1). Yet the court used Anna's proposed calculations that did not include any adjustments to income for spousal support. The resulting award is inequitable. So we remand for the district court to recalculate the child support Mike owes after adjusting the parties' respective incomes for duration of the spousal-support award.

### IV. Spousal Support

Mike next urges the court awarded "an excessive amount" for spousal support. The district court determined Anna needed rehabilitative spousal support in the amount of $2000 per month for thirty months to allow her to complete job

---

[2] As he acknowledges on appeal, at least one of those assertions was clearly erroneous since he could not have owned a 2010 vehicle *before* the parties' 2001 marriage.

training and find suitable work in her field. Mike contends the monthly support amount should be lowered to $750 because "[h]e is saddled with debt."

"Spousal support is not an absolute right; rather, its allowance is determined based on the particular circumstances presented in each case." *In re Marriage of Mills*, 983 N.W.2d 61, 67 (Iowa 2022). We consider many factors when assessing spousal support, including the marriage's length, the health and age of the parties, the earning capacity of the party seeking support, the feasibility of and timeline for the party seeking support becoming self-sufficient, and the results of any property division. *See* Iowa Code § 598.21A(1)(a)–(j) (2023). "Rehabilitative spousal support is a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting." *In re Marriage of Sokol*, 985 N.W.2d 177, 185 (Iowa 2023) (cleaned up).

According to his own financial affidavit, Mike earns more than $10,000 per month as compared to Anna's $3000. And despite his appellate claim of being "saddled with debt," the only debt Mike included in the documents available on our review was the mortgage on the house (which he was awarded in the property division), specifically noting on his financial affidavit no other balance due for installment payments or other debts. Anna, on the other hand, stayed home with the couple's children for nearly twenty years after moving to a new country and seeks schooling to become self-sufficient as a surgical technician—a goal she was already working toward at the time of trial. Considering the twenty-three-year marriage, the respective roles of the parties in the marriage, the vast income difference, and Anna's need and desire for training for work that would allow her

to become self-sufficient, we find that the awarded rehabilitative support is both necessary and appropriate. Because it is equitable, we affirm the spousal-support award.

### V. Appellate Attorney Fees

Anna asks for an award of appellate attorney fees and helpfully submitted an attorney-fee affidavit supporting her request. *See In re Marriage of Samuels da Fonseca Silva*, 15 N.W.3d 801, 808 (Iowa Ct. App. 2024) (expressing our preference "that parties requesting appellate fees do so in their briefs and submit an attorney-fee affidavit immediately after oral argument or after the case is submitted without oral argument"). We have discretion whether to award appellate attorney fees in an appeal of a dissolution decree. *See id.* In exercising that discretion, "we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (cleaned up). Considering these factors, including Mike's partial success on appeal and the parties' respective abilities to pay, we exercise our discretion to deny Anna's request for appellate fees. Appellate court costs shall be assessed equally to the parties.

**AFFIRMED AS MODIFIED AND REMANDED.**

Schumacher, P.J., concurs; Buller, J., specially concurs.

**BULLER, Judge** (specially concurring).

I reluctantly concur. But if we were writing on a blank slate, I would find Mike's failure to attend trial precluded appellate review and summarily affirm.

As we have made clear: "We are a 'court for the correction of errors at law,' Iowa Code § 602.5103(1), and we cannot correct an 'error' the district court never made." *State v. Hernandez*, 20 N.W.3d 502, 509 (Iowa Ct. App. 2025) (also citing *State v. Gomez Medina*, 7 N.W.3d 350, 355 (Iowa 2024)). And as the supreme court has observed, our error-preservation rule has "roots that extend to the basic constitutional function of appellate courts." *State v. Harrington*, 893 N.W.2d 36, 42 (Iowa 2017). In my view, the Iowa Constitution likely requires preservation of error. *See* Iowa Const. art. V, § 4 ("The supreme court . . . shall constitute a court for the correction of errors at law . . . .").

Applying these principles of error preservation, I would find Mike cannot skip trial below and claim error for the first time on appeal. This sandbagging is contrary to the adversarial process, undermines judicial integrity and efficiency, and blindsides the district court. And these concerns are just as present in dissolution cases as any other. *See In re Marriage of Jennings*, No. 23-0850, 2024 WL 1551225, at *1 (Iowa Ct. App. Apr. 10, 2024) (discussing these principles and finding error not preserved).

As an intermediate appellate court, I recognize we are bound by the supreme court's decisions. *E.g., State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014). So I cannot fault the majority for its application of *In re Marriage of Huston*, 263 N.W.2d 697, 699–700 (Iowa 1978). And I therefore concur in the judgment under existing precedent.